Good morning, counsel. Good morning. Please proceed. May it please the court, Kristen Thayer on behalf of appellant Devon Kauwe, I'd like to reserve two minutes for rebuttal. I'll watch my time. The government's breach of the plea agreement in this case caused a substantially unreasonable prison sentence for Mr. Kauwe. First turning to the breach, the government agreed to no, it would not argue for any enhancements other than the 38 base offense level based on the amount of drugs. And the government also agreed to recommend a low end guideline sentence as long as Kauwe did not request a lower than guideline sentence. But before sentencing, the government filed a sentencing memorandum that breached both, that both explicitly and implicitly breached the plea agreement. It The problem here is timing, because at the hearing, Mr. Kauwe's lawyer asked for a below guideline sentence, right? And once you do that, then the government can argue for a higher sentence within the range, right? So the problem you have is the timing that the government, you say, breached and argued for a sentence above the minimum of the guidelines, the guideline low end, before Mr. Kauwe put in any request for a below sentence guideline. So that's your argument, basically, a timing one. Yes, Your Honor, that's exactly, and the timing is exactly what distinguishes this case from the cases the government relies on, the, quote, fair response cases, where, such as Maldonado and Marcello, I believe is the other case. In those cases, it was very clear that the government of the lower guideline or whatever released the government to argue outside of their low end argument, low end recommendation. And that's what's missing here, and that's what makes it a prejudicial plein air here, is that before sentencing, the government asked for, in the memo, it said a sentence within the range, which is not low end, and perhaps more egregiously, it engaged in the exact pejorative editorializing that this court can, the government cannot engage in. And the best example of, or that sort of pejorative editorializing is the implicit breach of the plea agreement. Counsel, let me ask you this. Back to Judge Refani's point about timing. Yes. Let's assume for a moment that defense counsel had said what was said before the government put in its, if you will, its position paper on this, and they said exactly what they said that you now find a breach of the agreement. Would it have been a problem if there were no agreement, basically? In other words, if it were simply a response, something that the defense had put forward first? I'm sorry, are we still operating under the triggering event of the plea agreement? I'm assuming different facts for a minute. Okay. Put away any kind of a plea agreement, and if the defense counsel had said exactly what the defense counsel ultimately did, and if the government had responded after that with exactly what it said in its written work to the court that you now find a breach of the agreement, would it have been a violation of any case law that you're aware of? No, Your Honor. I think it would be basically what any facts, many facts can be relevant in sentencing. So if you had no plea agreement, then... In this case, really, as my colleague points out, it's really one of timing... Absolutely. ...and how we read both what the government said and what the agreement required. What is the most, from your perspective, if you cite it to us in the record, what is the most offensive, suggestive language that you find in the government submission that you think is the basis for overturning this particular sentence? There's a few, but I would like to highlight, I think, one of the worst sentences in the government sentencing memo, the record at page 73. The government said, it's dangerously high purity, high quality, large quantity methamphetamine that could devastate a community. And that's just not... That is very clear advocacy that is that pejorative editorializing that Heredia admonished the government for doing. Is there any fault in that? I'm sorry, Your Honor? Is there any fault in that statement? No, Your Honor. That's... And that's not the standard in Heredia. Yeah. Yes, Your Honor. It's not that the government represented false and misleading information. Actually, I retract that. The government did represent that Coway had stated things to the undercover about firearms dealing and sort of being in these other networks, criminal networks. But the undercover cooperation, they acknowledged those were complete brags that Coway was showing off to this undercover agent to prove that he should engage in this deal. So I will say that there's slightly misleading evidence in that the government knew Coway was bragging and he was not actually engaging in other criminal actions. Where in the record would you cite the government knew that he was bragging about the firearms matters? That would be in the motion. It's in the sealed exhibit or the sealed excerpts of record. The motion for downward departure under the 5K guideline recognizes that Coway was bragging to the undercover. And then I would also highlight that the sentencing memo and the exhibits attached to the government sentencing memo really highlighted over and over the purity of the methamphetamine. And then there was pictures of the bundles of methamphetamine in the government's exhibits. And none of that was ever in dispute. We were always under the actual methamphetamine guideline. So that was just yet another highlighting and reinforcing of a fact that was never in dispute and had nothing to do with the guideline calculation that was properly in dispute about the amount. Are these matters that the district judge could have determined him or herself in this case without any reference by the government? In other words, about the quality of the drugs and their use and the effect on the community, for example? I believe that this was actual methamphetamine was in the PSR. I can re-look at that and address in rebuttal. I'm not sure that the exact percentage of purity and that it was 99 percent. I don't think that was ever highlighted in the PSR. And yes, that the district court could believe that this is a high amount of meth that could devastate a community. But the point is that's what the guidelines are for. The guideline of 38 was applied to Mr. Cowley because the district court found such a high level of methamphetamine in the conspiracy. So arguing for this devastation of a community is therefore arguing for a higher than low end guideline sentence or above the range, which is what the district court imposed here. If there were no breach, is there a waiver of the right to appeal in this case? There's not a complete waiver. If this court finds no breach, then the waiver is to the procedural errors. Those would not be something this court would address. But Cowley always reserved the right to appeal an upward variance from the guidelines as determined by the court. And on what basis? The variance above the guideline range. So the guideline range was 97 to 121 months. On what basis would he appeal? If there's no waiver for that difference of nine months, I'm thinking it is. On what basis would he appeal that far? It's a substantively unreasonable sentence is the doctrine. And the reason this case is one of those rare cases is something I'd like to highlight that maybe didn't come out in the briefing as strongly as we wanted. But Cisneros was undisputedly the top of the guideline, the defendant who, the co-conspirator who got all of these drugs and distributed it down the chain. In between this underlying conspiracy and sentencing, he was charged, Cisneros was charged in another drug conspiracy in the state of California for cocaine. So Cisneros was a big-time drug dealer that had picked up a new charge. Cowley had no criminal history, no other arrests. It's one of those rare PSRs where it doesn't even have an arrest for a traffic citation or anything like that. But Cowley was given 130 months upward variance, and Cisneros was given a low-end sentence of 135 months. And that just cannot be reconciled. It's a disparity between the defendants and Mr. Cisneros received, or Mr. Cowley received. Let me save some of your time. Yes, Your Honor. Thank you so much. I'd be interested in knowing what your best argument is that this was a substantively unreasonable sentence. Thank you. Okay. Let's hear it from the guy. May it please the Court, Bill Reed for the United States. The government abided by the plea agreement in this case. Because the defendant did not object to the government's sentencing memo, its sentencing arguments or claim breach of the plea agreement before the district court, the issue is before this court under a plain-air review standard. The defendant did not object to or did not claim a breach of the plea agreement before the district court because the plea agreement plainly contemplated the government's sentencing memo, which the defendant now for the first time on appeal claims constituted a breach of the plea agreement, even if the plea agreement had not provided for the mutually anticipated arguments. The government styled its sentencing memo as the government's response to the sentencing memo, and it's quite extensive in detailing the nature of the defendant's aggravating role, emphasizing the purity of the drugs, and concludes by saying that a sentence within the guideline range would be appropriate in this particular case. How is that not a breach of the plea agreement under which the government agreed to offer at the low end or to make a recommendation at the low end? A couple of responses, Your Honor. First of all, the plea agreement, the plain language of the plea agreement, provided for both parties to provide to the district court additional information regarding the nature, the scope, and the extent of the defendant's criminal conduct, as well as any aggravating or mitigating facts or circumstances. The defendant had filed a sentencing exhibit, which I believe was about a 45-page document, primarily the substantive portion of which was constituted by a self-serving letter from the defendant in which he made a number of claims minimizing his role in this nine-defendant Title III wiretap conspiracy that stretched from Hawaii to Nevada to Colorado, claimed that he basically was a victim of circumstances, had been sitting in a bar when someone approached him, and the next thing he knows, I'm paraphrasing, next thing he knows he's conducted two methamphetamine, substantial methamphetamine transactions for substantial amounts of money. Counsel, in response to my colleague's question, are you saying that what the government said in its sentencing memorandum was merely a response to this letter, among other things, that the defendant had already produced? In part, Your Honor. The defendant also, while he had not filed a sentencing memorandum making the specific request, in looking at the pre-sentence investigation report, he had made a request, filed objections with the probation officer, and had requested a below-guideline sentence is appropriate in the defendant's case, and he explained why. That was on September 6th. The sentencing hearing was on October 30th. The government filed its sentencing memorandum, I believe, October 26th. So in addition to his letter that he'd made a request through the pre-sentence investigation report, which goes to the district court, so it's in response to all these things out there, plus the plea agreement provided for the government to allow for the government to provide additional information. But when the government says, and I'm looking at the page 5 of the government's sentencing memorandum, response sentencing memorandum, that a sentence within the applicable guideline range, after considering the 3553E factors and the 5K motion by the government, is not greater than necessary. It's appropriate. Essentially, the government concludes this 5-page memo with, well, in the government's assessment, a sentence within the applicable guideline range as calculated by the district court would be appropriate. Is that a withdrawal of the low-end offer? I don't want to sell. That's just mistakenly typed in here. I don't know exactly what went through the mind of the prosecutor who filed this, and I don't want to sell too close to it. But it's within, when he asked for a within the guideline sentence, technically I would submit he's not asked for anything above the guidelines. And then I would submit if that indeed is characterized as a breach at that point, which for the reasons I previously attempted to submit to the court was not. At the sentencing hearing, the prosecutor multiple times asked for a low-end sentencing, made a low-end sentencing request from the district court of 97 months. There's no dispute before this court that the defendant's sentencing guideline range, as determined by the district court, was 97 to 121 months. The prosecutor asked multiple times for a low-end sentence of 97 months. So if indeed I would submit it was not a breach to ask for a within guideline sentence after the defendant had submitted his letter minimizing his conduct and had through the PSR asked for a low-end guideline sentence, then the government within the plea agreement was permitted to ask for anything within his applicable guideline range but stuck to the low-end sentencing recommendation before the district court. I'm just wondering if there was a mix-up with Mr. Fua because it sounds like the sentencing memo the government put in was very much responding to the kind of things Mr. Fua said and recommending a within guideline range. I'm just wondering if there was some mix-up because that memo never says low-end. Correct, Your Honor. The government sentencing memo did not specifically request low-end. It did, though, go through an itemization of Mr. Cowley's conduct in this conspiracy. So from that point of view— But was it anything more than the district judge already had? Did they need to emphasize it? And is it a breach to emphasize it when the judge already has that information from the PSR? I would submit, Your Honor, that, one, it was information that the district court already had. I was looking through the plea agreement, the facts in the plea agreement. Sometimes the facts are fairly nominal facts, but these were extensive facts. And the district court had that information from the plea agreement and from the PSR. But I would submit that the government was entitled to point out these aggravating facts and circumstances in response here to this defendant's letter, primarily, where he minimized claim that he was essentially sitting in a bar when somebody needed— said that letter was dated November—I'm sorry, September 6th. The plea agreement was dated September the 13th, and the sentencing memorandum was after that. So whatever he said in the letter that you found to be highly unrealistic and needed to be responded to, presumably that was taken into account at the time that the plea agreement was entered into. Wouldn't that be correct? I'm not certain about when his letter was— I thought you said it was dated the 9th of September. Perhaps I mistook. I believe the PSR, the objections to the PSR were made on September 6th. Okay, so let's take that date. The objections were made September the 6th. The plea agreement was done on the 13th of September. So presumably, whatever had been said back and forth at that point had been taken into account when the government agreed what it was going to do in the plea agreement. Is that a fair statement? I think if I understand Your Honor's question, I think there's— the defendant entered his plea on September 13th, 2016, and I believe that the PSR, what I'm referring to, was September 6th, 2017. Oh, I see. It was a different year later. Yes, Your Honor. And to account for the defendants, I believe there was— I understand. You can see why I would be confused. You didn't mention the year. So if it occurred afterwards, then I get your point. Well, I apologize if I made it confusing. Nine defendants and a complicated case from that sense. But the district judge made it clear that he was intimately familiar with this case, had been resting with him, I think he said, for over three years. He was familiar with all defendants, the nature and circumstances of this defendant's conduct, his role, and he imposed an appropriate, substantially, slightly above guideline, reasonable sentence. So let me see. I just want to get your argument here. You have two reasons why the government didn't breach for not asking for a low-end sentence. One is that he wrote a letter saying, you know, I got caught up in this mess, and the other was to the probation people, he said, I really would like a low-guideline sentence. Correct, Your Honor. Yes, Your Honor. That excuses or is justification for what the government did in its sentencing memorandum. And one other factor which I don't think is as strong as the letter and his specific request in the PSR for a below-guideline sentence, which opened the door to any of this, I would submit, there was also the defendant reserved the right, and I see my time is up. If I could just finish this thought. The defendant reserved the right to argue for a lower base offense level based upon his involvement in the amount of methamphetamine. He claimed it was only 10 pounds. The government wanted him held accountable for 17 pounds of methamphetamine, in which he, quite frankly, told the district court a sentencing hearing was an appropriate calculation. He just asked for benevolent treatment. Unless there are any other questions, I see my time is up, and I will submit it. Thank you. Thank you, Your Honor. Thank you, counsel. You have a little rebuttal time. Thank you, Your Honors. So to address Judge Smith, your question about substantive and reasonableness, the record at page 43 at sentencing, the government admitted that Coway's substantial assistance is what led to Fua and Cisneros pleading guilty. So that in itself shows that he warranted the three-level departure downward for that substantial assistance. But then the district court basically eviscerated that three levels by varying up or to 130 months, which was five months below the original guideline. And I think that's our strongest substantive unreasonable. He got the most levels for cooperation and got absolutely no benefit for that at sentencing. I want to ask two questions. The first is, where are we with the plea agreement? He says that you abandoned it by making these arguments to the probation office, putting aside the letter business, and therefore his sentencing memorandum did not reflect the plea agreement. So where's the plea? I argue that the interactions with probation is not the same thing as formally asking in either the sentencing memo or at sentencing for the district court to impose a below-guideline sentence. You can argue and try to hedge your bets with probation, but that doesn't mean that that's going to be your position at sentencing under the plea agreement. Where are we with the amount? I take it 17 is the conspiracy amount, and you argued 7 is what he's responsible for? Yes. Based on the finding, the district court only ever held that he was, quote, Coway was aware of the other 10 pounds, and that's under relevant conduct not enough. It needs to be something as part of Coway's agreement with the conspiracy. Your argument is unless we have a breach of the plea agreement, those arguments are waived. Yes, Your Honor, that procedural error. Thank you. Thank you both for your argument. The case just argued is submitted.
judges: M. Smith, Nguyen, Restani